## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacity as trustees and fiduciaries of the ILA PRSSA PENSION FUND,<br><br>Plaintiffs<br><br>v.<br><br>ILA LOCAL 1740, AFL-CIO, an Unincorporated Labor Organization; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No. 18-01598<br><br>**COMPLAINT FOR DELINQUENT EMPLOYER CONTRIBUTIONS AND WITHDRAWAL LIABILITY** |

### COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiffs Mark Blankenship, Dale MacGillivray, Francisco González Rios, and Angel Febrés Alméstica, in their capacity as the Board of Trustees of the ILA PRSSA Pension Fund (collectively, "Plaintiffs"), hereby complain of Defendants ILA Local 1740, AFL-CIO ("Local 1740"), and DOES 1 through 10, inclusive (collectively, "Defendants"), and allege as follows:

### THE PARTIES

1.  Plaintiffs are Trustees and plan fiduciaries of the ILA PRSSA Pension Fund (the "Pension Fund"). The Pension Fund is a multiemployer employee benefit plan within the meaning of Sections 3, 4, and 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002, 1003, and 1132. Plaintiffs administer the Pension Fund and have standing to bring this action on behalf of the Pension Fund pursuant to the express provisions of the Trust Agreement establishing the Pension Fund (the "Trust Agreement") and ERISA §§ 502, 515, and 4301, 29 U.S.C §§ 1132, 1145, and 1451.

2.      Defendant Local 1740 is a labor organization affiliated with the International Longshoremen's Association, AFL-CIO.  Local 1740 is the post-merger successor of ILA Local 1575 ("Local 1575").  In so merging, Local 1740 assumed all liabilities and obligations of Local 1575.  Local 1740 is headquartered in San Juan, Puerto Rico. Prior to the merger, Local 1575 was also headquartered in San Juan, Puerto Rico, and was an employer within the meaning of ERISA §§ 3(5) and 515, 29 U.S.C. §§ 1002(5) and 1145.

3.      Plaintiffs are ignorant of the true names and capacities of DOE Defendants sued herein as DOES 1 through 10, and therefore sue these DOES 1 through 10 by fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

4.      Pursuant to ERISA § 4001(b), 29 U.S.C. § 1301(b), all trades or businesses under common control are treated as a single employer for purposes of Title IV of ERISA, 29 U.S.C. § 4001 *et seq*., which governs the termination of employee benefit plans. At all relevant times, DOE Defendants 1 through 10, inclusive, were trades or businesses under common management, control, ownership, and operation, or a single employer under federal law with Local 1575, and after the merger, with Local 1740.  Local 1575, and after the merger Local 1740, and DOES 1 through 10, inclusive, constituted a commonly controlled group of trades or businesses and were a single employer pursuant to ERISA § 4001(b), 29 U.S.C. § 1301(b). Accordingly, Local 1575, and as successor by merger, Local 1740, and DOES 1 through 10 are each jointly and severally liable for any obligations to the Pension Fund that Local 1575 or Local 1740 has incurred pursuant to Title IV of ERISA, 29 U.S.C. § 4001 *et seq*.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action arises under 29 U.S.C. § 1001 *et seq*.  Plaintiffs brings this action under ERISA §§ 502 and 4301, 29 U.S.C. §§ 1132 and 1451.

6.      Venue is proper in this district under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, based on information and belief, Defendants reside, do business or may be found within

this district, the breaches giving rise to Plaintiffs' claims occurred in this district, and the Pension Fund is administered in this district.

## FACTUAL ALLEGATIONS

7.      Prior to its merger with Local 1740, Local 1575 represented longshore workers in the Port of San Juan, Puerto Rico.

8.      At all relevant times, Local 1575 was bound by the terms of a Participation Agreement ("PA") between it and the Pension Fund.  Under the PA's terms, Local 1575 became subject to all the terms and conditions of the Trust Agreement, including the requirement that Local 1575 make contributions to the Pension Fund on behalf of its employees pursuant to terms consistent with those set forth in collective bargaining agreements between Local 1575 and certain employers.   Local 1575 did in fact make quarterly contribution payments against invoices generated by the Pension Fund under the terms of the PA and Trust Agreement, thereby adopting the terms of these agreements, including the requirement to make contributions, through this affirmative conduct.

9.      Local 1575 made contributions to the Pension Fund, signifying acquiescence to its obligation to make contributions to the Pension Fund.

10.     The PA and Trust Agreement provide for prompt payments by Local 1575 of all employer contributions to the Pension Fund. In the event, Local 1575 failed to make these contributions, and the Pension Fund is forced to pursue legal action against Local 1575 and is awarded judgment in its favor, Trust Agreement provides that Local 1575 shall pay:

 (I) the unpaid contributions, plus

(II) interest on the unpaid contributions, determined at the annual rate of eight percent (8%), plus

(III) liquidated damages equal to the greater of –

       (A) the amount of interest charges on the unpaid contributions, or

       (B) twenty (20%) percent of the unpaid contributions, plus

(IV) reasonable attorneys' fees and costs of the action, and

(V) such other legal or equitable relief as the court deems appropriate.

(Trust Agreement, Article VI, Section 3, pp. 29-30.)

11.     Despite its obligations under the PA, Local 1575 failed to make the required contributions to the Pension Fund on behalf of its employees based on their employment with Local 1575 during the calendar quarter ended March 31, 2015.

12.     The total contributions that Local 1575 should have, but failed, to make during this time period amount to at least $7,040.00.

13.     Effective March 11, 2015, Horizon Lines, Inc. ("Horizon Lines") executed an assets purchase agreement to sell all of its San Juan, Puerto Rico terminal assets, and assign its lease with the Puerto Rico Port Authority.  These actions followed a prior announcement by Horizon Lines that it would cease providing liner services between the United States and Puerto Rico.  Horizon Lines was the last employer required to make contributions to the Pension Fund pursuant to a collective bargaining agreement with Local 1575.

14.     Horizon Lines' cessation of operations on March 11, 2015 terminated Horizon Lines' obligation to make further pension contributions to the Pension Fund.  In light of that development, the Board of Trustees took action to terminate the obligation of all remaining employers, including Local 1575, to make further contributions to the Pension Fund effective March 31, 2015.  Together, these actions resulted in the withdrawal of every employer, including Local 1575, from the Pension Fund as of that date, and, consequently, termination of the Pension Fund by mass withdrawal pursuant to ERISA § 4041a(a)(2), 29 U.S.C § 1341a(a)(2), and 29 C.F.R. 4219.11(b), with a mass withdrawal valuation date of September 30, 2015, and imposition of mass withdrawal liability on the part of Local 1575 to the Pension Fund pursuant to ERISA §§ 4202, 4211 and 4219, 29 U.S.C. §§ 1382, 1391 and 1399.

15.     By written agreement dated July 13, 2015, Local 1575 agreed to merge into Defendant Local 1740.  As a result, Local 1740 assumed "all obligations" of Local 1575 pursuant to this written agreement, including Local 1575's unpaid contribution obligations to the Pension Fund and its withdrawal liability obligations to the Pension Fund.

4

16.     On or about July 1, 2015, pursuant to ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1), the Pension Fund delivered to Local 1575 a written notice of the estimated amount of Local 1575's initial withdrawal liability and the initial schedule for liability payments in the quarterly amount of $14,080, and made a demand for payment of withdrawal liability in accordance with the schedule.  Pursuant to ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2) and the aforesaid notice and demand for payment, Local 1575 was required to begin making quarterly installment payments in the amount of $14,080.00 starting no more than 60 days after the date of demand, which was July 1, 2015.  Neither Local 1575 nor Local 1740 responded to this notice.

17.     On January 11, 2016, the Pension Fund delivered a notice to Local 1740 demanding that Local 1740 comply with its legal obligations, as successor to Local 1575, to pay outstanding contributions due to the Pension Fund, with accrued interest, and all outstanding quarterly payments due for its withdrawal liability with interest.  Local 1740 did not respond to the Pension Fund's January 11, 2016 notice.

18.     On February 11, 2016, Plaintiffs again contacted Local 1740, by letter, demanding that Local 1740 comply with its legal obligations as successor to Local 1575 to pay outstanding contributions and quarterly payments due for the withdrawal liability due to the Pension Fund. The Pension Fund noted, should it be forced to pursue this matter in federal court, it would be entitled to unpaid contributions and unpaid quarterly payments due for withdrawal liability, liquidated damages as well as reasonable attorney's fees and costs.

19.     On or about August 23, 2016, the Pension Fund delivered a further written notice to Local 1740, pursuant to 29 C.F.R. § 4219.16, which detailed the sources of Local 1740's successor withdrawal liability resulting from Local 1575's mass withdrawal from the Pension Fund.  This written notice explained that, as of September 30, 2015, the liability for unfunded vested benefits that were allocated to Local 1575 resulting from its mass withdrawal from the Pension Fund (the "Reallocation Liability") totaled $322,105.00.  The notice further explained that the present value of unfunded vested benefits that were allocable to Local 1575 at the time of its initial withdrawal from the Pension Fund (the "Initial Withdrawal Liability") combined with *de*

5

*minimis* and 20-year-limitation amounts resulting from the mass withdrawal (the "Redetermination Withdrawal Liability") totaled $339,662.00.   And, accordingly, Local 1740's total principal amount due as a result of Local 1575's mass withdrawal was $661,767.00.

20.     The August 23, 2016 notice set forth an amended schedule for liability payments consisting of 54 quarterly payments of $14,080.00 each, plus a final quarterly payment of $651.00. The notice stated that the next quarterly payment was due on October 1, 2016, with each subsequent quarterly payment due on a quarterly basis thereafter.   Local 1740 did not respond to this notice.

21.     Local 1740 did not request a review of the Pension Fund's assessment as set forth in the August 23, 2016 assessment notice – or the Pension Fund's prior notices – or otherwise respond.   Consequently, Local 1740 waived any right to demand arbitration of its withdrawal liability, and the amounts set forth in the Pension Fund's February 2016 notice became due and owing. ERISA §§ 4221(a)(1), 4219(b)(2)(A), 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1).

22.     The Pension Fund sent a letter, dated April 27, 2018, which again reiterated that Local 1740 had assumed all obligations of Local 1575.   As of April 1, 2018, the outstanding balance due from Local 1740's contribution obligations were $8,925.43.   In addition, the letter notified Local 1740 that it was obligated to pay withdrawal liability it owed to the Pension Fund.

23.     As of April 30, 2018, Local 1740 owed $154,880.00 with respect to its withdrawal liability assessment, which is the sum of eleven quarterly installment payments on its withdrawal liability due since October 1, 2015, plus $75,248.00 in accrued interest, calculated at the statutory rate promulgated by the Pension Benefit Guaranty Corporation pursuant to 29 C.F.R. 4219.32(b). The total past due amount as of April 30, 2018, with respect to the withdrawal liability assessment was $220,128.00 (which amount does not include future quarterly installment payments due after that date). The next quarterly installment payment of $14,080.00 was due on July 1, 2018.   Local 1740 has not made any quarterly installment payments to date.

24.     In the Pension Fund's letter to Local 1740 dated April 27, 2018, the Pension Fund notified Local 1740 that if Local 1740 did not pay all past due quarterly withdrawal liability

payments, plus interest, within sixty (60) days of receipt of that demand letter, the Local would be in statutory default under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), and it would then be required to make immediate payment of the outstanding lump sum amount of the total withdrawal liability owed, to wit: $661,767.00, plus interest thereon from October 1, 2015 at the statutory rate described in 29 C.F.R. 4219.32(b) until the entire amount is paid in full.  Local 1740 received a copy of that letter on April 30, 2018 by personal service at its offices in San Juan, Puerto Rico.

25.     Because more than 60 days have passed since Local 1740 received the demand letter dated April 27, 2018, and Defendants, and each of them, have failed to make any of the required payments of withdrawal liability to the Pension Fund, Local 1740 is in statutory default under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), and it therefore is required to make immediate payment of the outstanding lump sum amount of the total withdrawal liability owed, to wit: $661,767.00, plus interest thereon from October 1, 2015 at the statutory rate described in 29 C.F.R. 4219.32(b) until the entire amount is paid in full.

26.     Because Defendants failed to remit any of the outstanding withdrawal liability, Plaintiffs are forced to bring the present action to collect withdrawal liability plus interest, liquidated damages, attorney's fees, and costs and such other legal or equitable relief as the Court deems appropriate pursuant to ERISA §§ 502, 4221(a)(1) and (b)(1), and 4301, 29 U.S.C. §§ 1132, 1401(a)(1) and (b)(1), and 1451.

### FIRST CLAIM FOR RELIEF
(Against Defendants for Withdrawal Liability,
ERISA § 4201, 29 U.S.C. § 1381)

27.     Plaintiffs incorporate the allegations in the previous Paragraphs of this Complaint as if fully set forth herein.

28.     ERISA § 4201, 29 U.S.C. § 1381, provides that Plaintiffs shall have the authority to assess withdrawal liability against contributing employers who withdraw from participation in the Pension Fund for any reason.

29.     Under the terms of the merger agreement between Local 1740 and Local 1575, Local 1740 explicitly agreed to "assume all obligations of Local 1575," including Local 1575's

obligation to make "necessary, routine, [and] ordinary business expenses in connection with [its] functions," like the quarterly payments on its withdrawal liability to the Pension Plan.

30.     Under 29 C.F.R. § 4219.11(b), Defendants are obligated to pay withdrawal liability as determined by Plaintiffs pursuant to the applicable statutory, administrative, and contractual provisions.  Plaintiff calculated that Local 1740 was responsible for $322,105.00 in Reallocation Liability, in addition to $339,662.00 that represents the present value of the Initial and Redetermination Withdrawal Liability as of September 30, 2015.  The total amount due for the mass withdrawal liability was, therefore, $661,767.00.

31.     These amounts were to be paid pursuant to an installment schedule of 54 quarterly payments of $14,080.00 each, commencing October 15, 2015, plus a final quarterly payment of $651.00.

32.     DOE Defendants 1 through 10, and any other trades or businesses under common control, are jointly and severally liable for Local 1740's withdrawal liability.

33.     By reason of the foregoing, Defendants, and each of them, are indebted to Plaintiffs for at least $661,767.00, or an amount according to proof, together with interest thereon, liquidated damages, attorney's fees, and other costs in accordance with the Trust Agreement and ERISA §§ 4301(b), 515 and 502(g), 29 U.S.C. §§ 1451(b), 1145 and 1132(g).

**SECOND CLAIM FOR RELIEF**
(Against All Defendants for Delinquent Contributions,
ERISA § 515, 29 U.S.C. § 1145)

34.     Plaintiffs incorporate the allegations in the previous Paragraphs of this Complaint as if fully set forth herein.

35.     Defendants were, and are covered by ERISA § 515, 29 U.S.C. § 1145, which provides that "an employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall … make such contributions in accordance with the terms and conditions of such plan or such agreement."  ERISA § 515, 29 U.S.C. § 1145.

36.     As set forth above, Defendants breached their obligation to make contributions to the Pension Fund and, in so doing, violated the provisions of ERISA § 515, 29 U.S.C. § 1145.

37.     ERISA requires Defendants to pay the contributions due under the PA and Trust Agreement, and further obligates Defendants to pay the Plaintiff's attorney's fees in connection with the collection of these contributions, plus interest and liquidated damages thereon.

38.     Despite its obligations under the PA, Local 1575 failed to make the required contributions to the Pension Fund on behalf of its employees based on their employment with Local 1575 during the calendar quarter ended March 31, 2015. The total contributions that Local 1575 should have, but failed, to make during this time period amount to at least $7,040.00, plus interest.

39.     Local 1575 was merged into Local 1740, and Local 1740 assumed all obligations of Local 1757, including to repay these delinquent contributions to the Pension Fund.

40.     By reason of the foregoing, Defendants, and each of them, are indebted to Plaintiffs for at least $7,040.00, or an amount according to proof, together with interest thereon, liquidated damages, attorney's fees, and other costs in accordance with the Trust Agreement and ERISA §§ 515 and 502(g), 29 U.S.C. §§ 1145, 1132(g).

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.  Defendants be ordered to pay withdrawal liability of at least $661,767.00 or an amount according to proof, plus interest thereon at that statutory rate described in 29 C.F.R. § 4219.32(b);

2.  Defendants be ordered to pay $7,040.00 in delinquent contributions to the Pension Fund, plus interest thereon at the rate of 8 percent per annum from the due date of those contributions until the date paid;

3.  Defendants be ordered to pay liquidated damages equal to the greater of (A) 20 percent of the amount of withdrawal liability and delinquent contributions owed,

or (B) an amount equal to the interest on such withdrawal liability and delinquent contributions;

4. Defendants be ordered to pay attorney's fees;

5. Defendants be ordered to pay costs of suit herein; and

6. Any other relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED.

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In San Juan, Puerto Rico, this 23rd of August of 2018.

Attorney for Plaintiffs
THE BOARD OF TRUSTEES, in their capacity as Trustees and Fiduciaries of the ILA PRSSA PENSION FUND

S/: <u>ENRIQUE J. MENDOZA-MENDEZ</u>
ENRIQUE J. MENDOZA MENDEZ
USDC- PR 202804

***MENDOZA LAW OFFICES***
P.O. BOX 9282
SAN JUAN, P.R. 00908-0282
TEL. (787) 722-5522/5530/5540
FAX. (787) 723-7057
EMAIL. mendozalo@yahoo.com