IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BOARD OF TRUSTEES, | |
| Plaintiff, | |
| v. | CIV. NO. 18-1598 (SCC) |
| ILA LOCAL 1740, AFL-CIO, | |
| Defendant. | |

**OPINION AND ORDER**

The Court granted the Board of Trustees' motion for summary judgment and ordered it to file a damages memorandum. Docket No. 156. In that memorandum, it provided us with a threadbare explanation of the work its San Francisco-based attorneys performed and the costs it incurred. So we ordered it to supplement its damages memorandum with a more detailed explanation. Docket No. 168. Local 1740 asked us to reconsider that order on the ground that we should have drastically reduced or disallowed attorney's fees and costs instead of allowing the Board to supplement its memorandum. Docket No. 170. We declined because it cited no authority that says that we *must* reduce or disallow the Board's fees instead of allowing it to

provide us with the detail that we need to meaningfully assess its work. Now that the Board has supplemented its damages memorandum and Local 1740 has responded to it, we award damages, attorney's fees, and costs. Local 1740 dedicates its oppositions to the Board's claims for attorney's fees and costs. Indeed, it says that it "has no objection to [the Board's] calculation of interest and liquidated damages." Docket No. 167, pg. 3. So we make short work of the Board's damages award then turn to attorney's fees and costs.

## I. DAMAGES

We granted the Board summary judgment on two claims: (1) delinquent contributions under the Employment Retirement Income and Security Act (ERISA) of 1974, 29 U.S.C. § 1145, and (2) withdrawal liability under the Multiemployer Pension Plan Amendments Act (MPPAA) of 1980, 29 U.S.C. § 1381. As to the delinquent contribution claim, we awarded it: "the unpaid contributions"; "interest on the unpaid contributions"; liquidated damages in an amount equal to the "interest on the unpaid contributions" or up to 20 percent of the unpaid contributions, whichever is greater; and

reasonable attorney's fees and costs. § 1132(g)(2). These awards are mandatory. *Laborers Health & Welfare Tr. Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988). The Board is entitled to these awards for its withdrawal liability claim as well. *See* § 1451(b) ("[A]ny failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution."). Thus, § 1132(g)(2) governs the Board's award for both claims. *Lads Trucking Co. v. Bd. of Trs.*, 777 F.2d 1371, 1374 (9th Cir. 1985); *Penn Elastic Co. v. United Retail & Wholesale Emps. Union, Loc. 115 Joint Pension Fund*, 792 F.2d 45, 47–48 (3d Cir. 1986); *cf. Robbins v. B&B Lines, Inc.*, 830 F.2d 648, 649–50 (7th Cir. 1987).[1]

We begin with the Board's delinquent contribution claim. The principal amount of unpaid contributions is $7,040.00. Docket No. 158, pg. 7; Docket No. 158-6, pg. 2. It became delinquent on April 1, 2015, and has been accruing

---

1. We said this when we granted the Board summary judgment. Docket No. 156, pg. 54. Local 1740 has not contested it and instead appears to embrace it. *Cf.* Docket No. 167, pg. 4 (listing § 1132(g)(2) as the applicable avenue for the Board's relief).

interest since. *Id.* Interest is calculated according to the rate that the plan provides. § 1132(g)(2). The plan states that interest will accrue at 8% per year. Docket No. 158-5, pg. 32. Calculating its interest as $1.54 per day [($7,040.00 x .08)/365] and applying that rate from April 1, 2015, until June 27, 2022, when it filed its damages memorandum, the Board says that Local 1740 owes it $4,076.64 in interest. Docket No. 158, pg. 7; Docket No. 158-7, pg. 2. Continuing the Board's daily, simple interest calculation until September 30th, the date that we enter judgment, Local 1740 owes the Board a total of $4,222.94 [($1.54 x 95) + $4,076.64] in interest. And because the interest exceeds the value of 20% of the delinquent contributions, the Board also receives $4,222.94 in liquidated damages. § 1132(g)(2)(C) (stating the court shall award the plan the greater of (1) the interest on the unpaid contributions or (2) up to 20% of the unpaid contributions); Docket No. 158-5, pgs. 32–33 (providing for liquidated damages of 20% of the unpaid contributions). The Board's award for its delinquent contributions claim is therefore $15,485.88 ($7,040.00 + $4,222.94 + $4,222.94).

Now to the Board's withdrawal liability claim. The principal amount of withdrawal liability is $661,767.00. Docket No. 158, pg. 5; Docket No. 158-2, pg. 3. Interest started accruing on October 1, 2015, when the amount became due. Docket No. 158, pg. 5; Docket No. 158-2, pg. 3; 29 C.F.R. § 4219.32(a)(1) (stating interest is assessed from the overdue withdrawal liability's due date). It is "charged . . . for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day . . . of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System." § 4219.32(b). For each full quarter, we calculate the interest by multiplying the principal amount of withdrawal liability by "one-fourth of the annual rate in effect for that quarter." § 4219.32(c)(1). For a full month in a partial quarter, we multiply the principal by "one-twelfth of the annual rate in effect for that quarter." § 4219.32(c)(2). And for each day in a partial month, we multiply the principal by "one-three-hundred-sixtieth of the annual rate in effect for that month." § 4219.32(c)(3). The Board calculates the total

interest, through June 27th, as $174,954.61. Docket No. 158, pg. 6; Docket No. 158-4, pg. 2. We will apply § 4219.32(c)'s formula to the rest of the second fiscal quarter of 2022 and to the third fiscal quarter of 2022, which ends September 30th, so that our judgment reflects the total prejudgment interest. Local 1740 does not contest that the interest rate for the second quarter of 2022 is 3.37%. Dividing that by four and multiplying it by the principal amount of withdrawal liability, the interest from the second quarter is $5,575.39. The interest rate for the third quarter is 4%.[2] Dividing that by four and multiplying it by the principal amount of withdrawal liability, the interest from the third quarter is $6,617.67. Altogether, the interest totals $181,770.86.[3] Because that amount is greater than 20% of the principal, the Board

---

2. *Data Download Program*, BD. OF GOVERNORS OF THE FED. RESERVE SYS., https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15 (select "Weekly Averages (Fed Funds, Prime and Discount rates)," select "go to download," select "review package," select the series "Average majority prime rate charged by banks on short-term loans to business").

3. We used the figures at Docket Number 158-4, but we substituted our figure for the second fiscal quarter of 2022 and added our figure for the third fiscal quarter of 2022.

receives it in liquidated damages as well. Thus, the Board's award for its withdrawal liability claim is $1,025,308.72 ($181,770.86 + $181,770.86 + $661,767.00).

## II.  ATTORNEY'S FEES & COSTS

The Board asks for $1,118,705.00 in attorney's fees to be paid to Trucker Huss, its San Francisco-based attorneys, and $254,762.50 in attorney's fees to be paid to Mendoza Law Offices, its local counsel. Docket No. 158, pg. 10.

After sifting through almost 70 pages of opposition to the Board's calculation of its reasonable attorney's fees and costs, we remind Local 1740 that awarding attorney's fees "should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The Supreme Court has admonished that we "should not" become "green-eyeshade accountants" looking to "achieve auditing perfection." *Id.* Our goal, instead, is to do "rough justice." *Id.* We have nonetheless carefully considered all of Local 1740's arguments, even the acrimonious ones.

Attorney's fees are calculated using the lodestar approach. *Cent. Pension Fund of the Int'l Operating Eng'rs &*

*Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014) (using lodestar approach to review attorney's fees awarded under § 1132(g)(2)(D)). In crafting the lodestar, we first calculate the number of hours that each attorney reasonably expended, excluding those that are "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 434). Second, we determine each attorney's reasonable hourly rate, which is "benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Id.* The product of the hours reasonably expended and reasonable hourly rates is the lodestar. *Id.* We can adjust the lodestar up or down based on a variety of factors, such as "the results obtained and the time and labor actually required for the efficacious handling of the matter." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

We begin with Attorney Mendoza's and the Trucker Huss attorneys' reasonable hourly rates. Local 1740 asks that we compensate the Trucker Huss attorneys and paralegal at the prevailing rates for attorneys of similar qualifications,

experience, and competence in Puerto Rico—not San Francisco. When determining reasonable hourly rates, we look to "the prevailing market rates in the relevant community." *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). When a party hires "counsel from outside the vicinage of the forum court," we "may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office." *Id.* Whether Puerto Rico or San Francisco is the "relevant community" turns on whether retaining the out-of-town counsel was reasonable. *Maceira v. Pagan*, 698 F.2d 38, 41 (1st Cir. 1983). If a client must look beyond his local legal market to find an attorney with specialized knowledge, then he should expect to pay that attorney's premium rate. *Id.* And if courts award less than that rate, "they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need." *Id.* But if a case does not require a specialist, then it is not reasonable to choose a higher priced outside attorney. In those cases, "the local rate is the appropriate yardstick." *Id.*

      In the Board's damages memorandum, it explains that it hired Trucker Huss and Mendoza Law Offices because its trustees had preexisting relationships with them, they have ERISA expertise and experience, and the "Employee Trustees" wanted to work with a firm in California and the "Union Trustees" wanted to work with one in Puerto Rico. Docket No. 158, pg. 9. The Board does not argue that it hired the Trucker Huss attorneys because this case required specialized outside counsel. And, in our view, this case is ordinary. It did not demand specialized knowledge beyond what Attorney Mendoza and other local counsel have. Though the factual record was extensive, the legal issues were not highly complex and thus did not call for the Board to hire a San Francisco-based, highly regarded ERISA boutique firm like Trucker Huss. To be sure, this was not an easy case. But, as we explain later, the parties caused that. Because this is an ordinary case, the "relevant community" is Puerto Rico. We will compensate the Trucker Huss attorneys based on the prevailing rates for attorneys of similar qualifications, experience, and competence in Puerto Rico.

Now to reasonable hourly rates. Attorney Mendoza says that his hourly rates are $350.00 for in-court work and $325.00 for out-of-court work. Docket No. 158-14, pg. 6. He supports these figures with his own affidavit and other attorneys' affidavits opining that these figures are reasonable. But the past fees awards that he attaches in support give him less than $300.00 per hour. They award him between $265.00 and $295.00 for in-court work and $200.00 to $265.00 for out-of-court work. To be sure, most of those awards are from many years ago. His rates will have increased since then. *See Martínez-Vélez v. Rey-Hernández*, 506 F.3d 32, 47 (1st Cir. 2007) (observing that "rates inflate over time"). Based on our caselaw research and knowledge of local rates and the parties' submissions, experienced attorneys in Puerto Rico tend to earn $250.00 to $300.00 per hour, associates earn $150.00 to $200.00 per hour, and paralegals earn $50.00 to $100.00 per hour. *See, e.g., Hermandad Independiente de Empleados Telefónicos v. P.R. Tel. Co.*, No. 18-1220 (BJM), 2019 WL 13200065, at *2 (D.P.R. Aug. 12, 2019) (collecting cases). We have considered all the information that the parties provided

us about each attorney and paralegal. After making a few observations, we will assign rates within these ranges.

Attorney Mendoza graduated first in his class from the University of Puerto Rico School of Law and served as associate director of the law review. Docket No. 158-14, pg. 1. He also received an LLM from Columbia University School of Law and has more than thirty years of litigation experience. *Id.* Considering his qualifications, competence, experience, reputation, and skill, we compensate him at $300.00 per hour for in-court work and $275.00 per hour for out-of-court work.

Attorney Kang graduated from the University of Virginia School of Law in 1999, has twenty-three years of litigation experience (nineteen of which she spent litigating ERISA and other employee benefits cases), has frequently published and presented on ERISA issues, and is nationally recognized as a highly skilled attorney in ERISA litigation. Docket No. 158-1, pgs. 4–5. Considering her qualifications, competence, experience, reputation, and skill, we compensate her at $300.00 per hour. Attorney Rudolph graduated from the University of San Francisco School of Law in 2011; has ten

years of litigation experience, mainly focused on ERISA and other employee benefits litigation; has been recognized by national publications in employee benefits law; and has written several articles and delivered presentations about ERISA litigation. *Id.* at 5–6. Considering his qualifications, competence, experience, reputation, and skill, we compensate him at $265.00 per hour. Attorney Reagan graduated from the University of California Davis School of Law in 2019, served as an Articles Editor on the University of California Davis Law Review, and has worked on several ERISA cases. *Id.* at 6. Based on her qualifications, competence, experience, and skill, we compensate her at $180.00 per hour.

Attorneys Wong and Deguines graduated from the University of California Hastings College of Law in 2020; served on the Hastings Law Journal and Hastings Business Law Journal, respectively; and have worked on several ERISA cases. *Id.* Based on their qualifications, competence, experience, and skill, we compensate them at $170.00 per hour. Paralegal Oliver obtained her certificate in Paralegal Studies in 2015 from the University of California, Berkeley.

And she is experienced in ERISA litigation. Based on her qualifications, competence, experience, and skill, we compensate her at $85.00 per hour.

Local 1740 argues that the attorneys' hourly rates should be reduced because they used one rate for both core and non-core work. "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them," and "certain components of fee awards (such as work performed in preparing and litigating fee petitions) may be calculated at discounted rates due to the comparative simplicity of the task." *Matalon v. Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015) (first quoting *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992); and then citing *Torres-Rivera*, 524 F.3d at 340). But we do not have to distinguish between core and non-core work. *Id.* As an alternative, we may apply an across-the-board cut to each attorney's rate to account for the difficulty of their work. *See id.* The five main attorneys (Mendoza, Kang, Rudolph, Reagan, and Wong) billed some time for less demanding legal tasks and work that is better classified as secretarial or clerical than legal. To account for the level of

difficulty of their work, we reduce their hourly rates by 5%. We apply this reduction to Attorney Mendoza's out-of-court hours.

Local 1740 argues next that we should deny fees to the attorneys that were not admitted *pro hac vice* and deny fees until admission for those admitted. Docket No. 167, pgs. 8–9. It even accuses the Trucker Huss attorneys of practicing law without authorization in Puerto Rico. *Id.* at 8. This is a meritless accusation. Our court has adopted the Model Rules of Professional Conduct. D.P.R. Civ. R. 83E(a). Those rules state than an attorney admitted to practice law in one jurisdiction may provide temporary legal services in another when those services are reasonably related to a pending proceeding before a tribunal there and "the [attorney], or a person the [attorney] is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized." MODEL RULES OF PRO. CONDUCT r. 5.5(c)(2) (AM. BAR ASS'N 2019). The commentary to this rule adds that "[w]hen a[n] [attorney] has been or reasonably expects to be admitted to appear before a court . . . , paragraph (c)(2) also

permits conduct by [attorneys] who are associated with that [attorney] in the matter, but who do not expect to appear before the court. . . . For example, subordinate lawyers may conduct research, review documents, and attend meetings with witnesses in support of the lawyer responsible for the litigation." Taking Rule 5.5(c)(2) and its commentary together, none of the Trucker Huss attorneys engaged in the unauthorized practice of law in Puerto Rico. The attorneys who entered a notice of appearance (Attorneys Kang, Rudolph, and Reagan) were at all times either authorized to practice before us or reasonably expected to be. And Attorneys Wong and Deguines performed supporting work for them. Because all the attorneys were either admitted *pro hac vice* and before then reasonably believed that they would be or had their litigation-support work filtered through such a person, they can all recover fees. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822 (9th Cir. 2009); *see also Spanos v. Skouras*, 364 F.2d 161, 168 (2d Cir. 1966) (en banc).

Now to reasonable hours. We begin with Attorney Mendoza. He worked 5 hours in court and 778.5 hours out of

court. Docket No. 158, pg. 10. Local 1740 asks that we reduce his hours by 50% because many of his time entries are vague. Docket No. 167, pg. 26. Parties seeking attorney's fees "should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. Adequate documentation includes "sufficient detail [to allow] a neutral judge [to] make a fair evaluation of the time expended, [and] the nature and need for the service." *Id.* at 441 (Burger, C.J., concurring). So while counsel need not include "great detail," he or she should "at least . . . identify the general subject matter of his time expenditures." *Id.* at 437 n.12 (majority opinion). We may reduce the award "[w]here the documentation of hours is inadequate." *Id.* at 433; *see also Torres-Rivera*, 524 F.3d at 336 (stating courts "may discount or disallow the total hours claimed if it determines that the time is insufficiently documented"). Some of Attorney Mendoza's entries are too vague for us to meaningfully assess whether the time that he expended was reasonable. But it is a small percentage. To account for the insufficiently documented hours, we reduce his out-of-court hours by 5%.

Local 1740 points out that Attorney Mendoza block-billed in January and February 2021. Docket No. 167, pg. 29. We see that he also block-billed in May 2021. That is, he listed the tasks that he performed and the total time he spent performing them but did not itemize the time he spent on each task. *See* Docket No. 158-15, pgs. 27–29, 32–33. We reduce the hours that he worked during that time by 35% because they are insufficiently documented. So we credit him for working 46.15 hours during those three months instead of 71.

Attorney Kang worked 515.1 hours, Attorney Rudolph worked 1,059.5 hours, Attorney Reagan worked 1,033 hours, Attorney Wong worked 150.7 hours, Attorney Deguines worked 1.5 hours, and Paralegal Oliver worked 14.6 hours. Docket No. 158-11, pg. 2. Local 1740 contends that these hours should be disallowed or reduced because Trucker Huss did not keep contemporaneous records. Docket No. 174, pgs. 4–5. This must be so, it says, because if Trucker Huss had those records, it would have submitted them in its original memorandum. *See id.* We do not know why Trucker Huss submitted records with generic descriptions of the work its

attorneys and paralegal performed the first time around. But
it said in both its original and supplemental memoranda that
its practice is to maintain contemporaneous billing records
through the LegalMaster program. Docket No. 158-1, pg. 8;
Docket No. 171-1, pgs. 2–3. Local 1740 does not push back on
that. It simply assumes that these records were not available
because Trucker Huss did not submit them until we asked it
to. We credit Trucker Huss's explanation, which is supported
by two affidavits and the surrounding circumstances, rather
than Local 1740's speculation. The exhibits in the
supplemental memorandum are identical to the exhibits in
the original except that they have an additional column
labeled "Transaction Description," which includes additional
detail about the task. And it is unlikely that the Trucker Huss
attorneys could fabricate convincing explanations of how
they spent thousands of hours over more than three years of
litigation in eight days. Indeed, Local 1740's two attorneys
complained that twelve days was not enough time for them
to evaluate—let alone convincingly fabricate—the entries.
Docket No. 174, pg. 2. In short, we see no reason to doubt that

the Trucker Huss attorneys contemporaneously recorded the description of each task that they spent time on.

Local 1740's next line of attack is that Trucker Huss's time entries are so heavily redacted that it cannot meaningfully challenge its attorneys' and paralegal's hours. Docket No. 174, pg. 6. Trucker Huss redacted detail from many of its entries on the ground that the redacted information is protected by attorney client privilege or constitutes work product. We see two types of redactions in its time entries. The first is fine, but the second is problematic. The first provides enough detail for us to understand the general nature of the legal work performed but omits the specific topic. For example, Attorney Kang billed time conferring with Attorney Mendoza about "ATTORNEY CLIENT PRIVILEGE" and taking notes on that conversation. Docket No. 171-2, pg. 4. That is fine. *Cf. Castañeda-Castillo v. Holder*, 723 F.3d 48, 79 (1st Cir. 2013) (approving the specificity of time entries where "each time entry lists a general description of the task, such as 'Prepared for oral argument before the First Circuit' or 'Drafted motion for expedited bond

hearing'"). The second redacts the entire description of the task or so much of it that we cannot meaningfully assess whether the time spent on that task was reasonable. For example, Attorney Kang billed for "[m]eet[ing] with Mendoza to ATTORNEY CLIENT PRIVILEGE" and "[a]ttend[ing] deposition of López; ATTORNEY CLIENT PRIVILEGE." Docket No. 171-2, pg. 27. Because we cannot meaningfully evaluate those entries, we disallow the hours associated with them. *Torres-Rivera*, 524 F.3d at 336 ("[T]ime records may be too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like. In that event, the court may either discount or disallow those hours."). Besides the redactions, the attorneys' time records are sufficiently detailed for us and Local 1740 to meaningfully assess them.

Most of the entries that Attorney Kang redacted have not been redacted to the point where we and Local 1740 cannot meaningfully assess them. But to account for the ones that have been too heavily redacted and a few block-billed entries that we see, we reduce her total hours by 5%. Now to

Attorney Reagan. She redacted only a small percentage of her entries, and none of the redactions prohibit us from meaningfully evaluating how she spent her time. We therefore leave her hours intact. Similarly, Attorney Rudolph redacted only a small percentage of his entries. But one is problematic: We subtract the 1.1 hours that he spent "[a]nalyz[ing] pretrial dates and deadlines and ATTORNEY CLIENT PRIVILEGED," Docket No. 171-2, pg. 83, because we cannot piece together what he was working on besides analyzing pretrial dates and deadlines. And only a small portion of the 1.1 hours could have been reasonably spent analyzing deadlines. Paralegal Oliver and Attorneys Wong and Deguines did not redact any of their entries, so we leave their hours intact.

Local 1740 argues next that all attorneys' total hours should be reduced because the Board overstaffed this case. Docket No. 167, pg. 27. We should have a "healthy skepticism" towards claims that it took multiple attorneys to do a single task, but we must remain mindful that "'[t]ime spent by two attorneys on the same general task is not . . . per

se duplicative' since '[c]areful preparation often requires collaboration and rehearsal,' especially in response to complex legal issues that are fiercely defended." *Castañeda-Castillo*, 723 F.3d at 80 (first quoting *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992); and then quoting *Rodríguez-Hernández v. Miranda-Vélez*, 132 F.3d 848, 860 (1st Cir. 1998)); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) ("[A] court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case. [But] courts must be careful not to throw out the baby with the bath water. Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic."). This litigation was contentious and, at times, acrimonious. We had to intervene to resolve issues that the parties should have been able to resolve themselves, and their rhetoric towards each other, especially Local 1740's, was often overblown. Because Local 1740's defensive tactics contributed to the difficulty of this case and the factual record was extensive, it was reasonable for the Board to use a team of attorneys. Indeed, Local 1740 used two. But five attorneys

substantially contributed to the work. That is too many. We also see redundant layers of review and duplicative or excessive work from those attorneys on many of the large tasks in this case. To reach a reasonable number of hours expended, we reduce Attorney Mendoza's (out-of-court), Kang's, Rudolph's, Reagan's, and Wong's hours by 20%.

In sum, our lodestar is as follows,

| Attorney/Paralegal | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Mendoza | In Court: $300.00<br>Out of Court: $261.25 ($275.00 x .95) | 5<br>565.24 [(778.5-24.85) x .75] | $149,168.95 |
| Kang | $285.00 ($300.00 x .95) | 386.33 (515.1 x .75) | $110,104.05 |
| Rudolph | $251.75 ($265.00 x .95) | 846.72 [(1059.5-1.1) x .8] | $213,161.76 |
| Reagan | $171.00 ($180.00 x .95) | 826.4 (1033 x .8) | $141,314.40 |
| Wong | $161.50 ($170.00 x .95) | 120.56 (150.7 x. 8) | $19,470.44 |
| Deguines | $170.00 | 1.5 | $255.00 |
| Oliver | $85.00 | 14.6 | $1,241.00 |

for a total of $634,715.60. Now that we have the lodestar, we

may adjust it up or down based on many factors. *See generally Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 337 & n.3 (1st Cir. 1997). There are no circumstances warranting an adjustment to the lodestar, and the parties do not argue that there are. The lodestar as is reflects reasonable attorney's fees.

### III. COSTS

Section 1132(g)(2)(D) states that the Board is entitled to "costs of the action." It asks for $49,121.86. Docket No. 158, pg. 10. When awarding costs under a statute that "simply refer[s] to 'costs,'" we "are limited to awarding the costs specified in §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019). Section 1920 states that we may tax as costs "[f]ees of the clerk and marshal," "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," "[f]ees and disbursements for printing and witnesses," "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," "[d]ocket fees," and "[c]ompensation of court appointed experts [and] interpreters." Expenses that fall outside of these confines, if

reasonable and necessarily incurred, might be recoverable as attorney's fees. *Hutchinson v. Patrick*, 636 F.3d 1, 17 (1st Cir. 2011) ("It is settled beyond peradventure that reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute."). Recovery can extend to many items, including travel expenses and computer research. *Id.*; *see also InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22 (1st Cir. 2004) (stating "computer-assisted research should be treated similarly [to disbursements that are ordinarily billed directly to the client] and reimbursed under attorney's fee statutes . . . , so long as the research cost is in fact paid by the firm to a third-party provider and is customarily charged by the firm to its clients as a separate disbursement"). The party seeking costs bears the burden of establishing that they are reasonable, and the court "may insist on examining particulars, such as receipts and logs," or reject unverified expenses out of hand. *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 739 (1st Cir. 1999).

We begin with the items that are taxable as costs then turn to the items that can be recovered as attorney's fees. Local 1740 argues that we should deny costs altogether because Trucker Huss did not comply with 28 U.S.C. § 1924, which requires the party submitting a bill of costs to support it with "an affidavit" stating that it "is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." Trucker Huss instead submitted a declaration saying that a "true and correct copy of [it]'s amended litigation costs is attached." Docket No. 171-1, pg. 2; *see also* Docket No. 158-1, pg. 11. Our court makes available to parties an AO 133 Form, which allows them to itemize their costs and includes a built-in statement that complies with § 1924. *Taxation of Costs Guidelines*, U.S. DIST. CT. FOR THE DIST. OF P.R., https://www.prd.uscourts.gov/taxation-costs-guidelines (select "Form AO 133 (rev. 12.01.2009) Bill of Costs"; then select "Download Form"). Trucker Huss did not use it. Because saying that its litigation costs are true and correct is much broader than saying that they were necessarily

incurred, and it attached no other documents from which we can discern that the costs were necessarily incurred, we will only tax costs that are necessary on their face. *See Phetosomphone v. Allison Reed Grp., Inc.*, 984 F.2d 4, 9 (1st Cir. 1993) (approving the decision to tax only the costs that were necessary on their face when the plaintiffs "neglected to file a bill of costs form or to supply any other verification that the costs claimed were 'necessarily incurred in the case'").

Trucker Huss first requests $600.00 for Attorney Reagan's and Rudolph's *pro hac vice* admission fees. There is a circuit split as to whether *pro hac vice* admission fees are taxable as costs. *Compare Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (concluding that *pro hac vice* admission fees are not taxable as costs), *with Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009) (concluding that *pro hac vice* admission fees are taxable as costs). The Seventh Circuit recently overturned its earlier precedents allowing *pro hac vice* admission fees to be taxed as costs in light of *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012). *Canter v. AT&T Umbrella Benefit Plan No.*

*3*, 33 F.4th 949, 959 (7th Cir. 2022). The Seventh Circuit's and Ninth Circuit's reasoning are faithful to *Taniguchi*'s admonition that § 1920 must be narrowly construed, 556 U.S. at 573, so we follow their lead and hold that *pro hac vice* admission fees are not taxable as any of the cost items in § 1920.

Trucker Huss asks for over $3,000.00 for fees related to serving subpoenas. But it used a private process server, rather than the U.S. Marshals Service. Taxable costs have a narrow scope, and our interpretation of § 1920 should not stretch the ordinary meaning of the cost items that Congress has authorized. *Taniguchi*, 556 U.S. at 573. Section 1920(1) authorizes us to tax the fees of the marshal. Those fees include service of process. § 1921. Because § 1920 allows litigants to tax "fees 'of' the marshal but does not require payment 'to' the marshal," we will allow Trucker Huss "to recover service costs that do not exceed the marshal's fees." *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *accord U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623–24 (11th Cir. 2000); *Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 172 (2d

Cir. 1996). *But see Alflex Corp.* v. *Underwriters Lab'ys, Inc.*, 914 F.2d 175 (9th Cir. 1990) ("Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)."); *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (holding that a litigant cannot "recover $250 for use of a special process server, because 28 U.S.C. § 1920 (1982) contains no provision for such expenses"). The marshals charge $65.00 per delivery. 28 C.F.R. § 0.114(a)(3). Trucker Huss's bill of costs lists fees for "subpoena service" and "subpoena related service." Docket No. 171-3, pg. 2. Because it has given us no explanation about the latter and they are not facially necessary, we disallow them. The former is facially necessary, so we allow those. Trucker Huss has four entries in a row that say, "First Legal processing fees - subpoena JD Baker." Docket No. 171-3, pg. 3. Two are dated "8/31/2020" and two are dated "9/2/2020." *Id.* While it is not uncommon to need to serve more than one subpoena on someone, it puzzles us why Trucker Huss would need to serve two to the same person on the same day twice.

We can assume that two of the four are facially necessary, so we will allow Trucker Huss to recover $65.00 for each of those.  In total, we allow $455.00 ($65.00 x 7) in service fees. We will also allow $292.09 in copying costs to create hard copies of the Board's motion for summary judgment for our chambers because those costs are facially necessary too.

Now to the costs of transcribing depositions. These costs are recoverable if "necessarily obtained for use in the case." § 1920(2). The First Circuit has held that deposition costs *should* be taxes if the depositions are "introduced in evidence or used at trial" and *may* be taxed if "special circumstances warrant it." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir. 1985). In another decision, it approved taxing these costs where the depositions were used to support a partially successful motion for summary judgment. *Bergeron v. Cabral*, 393 F. App'x 733, 735 (1st Cir. 2010) (unpublished). We tax deposition costs here because the Board used the depositions to craft its successful motion for summary judgment. Thus, they were necessary. The costs to transcribe the depositions total $4,468.70.

Now to postage.  While postage can be recovered through attorney's fees as a disbursement billed directly to the client, the $255.02 and $19.24 that Trucker Huss claims are not. That is because it has not provided us with anything that shows that these expenses are reasonable, and there are no readily apparent surrounding circumstances that allow us to fill in the blanks. The first postage expense is for an overnight FedEx delivery to Mendoza Law Offices on February 25, 2020. Docket No. 173-1, pg. 2. The second is for an overnight delivery to Inventus, LLC, on January 13, 2020. *Id.* at 3. There are no explanations about what these overnight packages contained nor why such urgent delivery was reasonable.

Most of the costs listed go to research fees and "Legility/Inventus information management, eDiscovery and litigation support charges." Docket No. 171-3. These expenses are charged each month, sometimes multiple times each month. Trucker Huss has provided us with no information about these charges, so even though they may be recoverable as attorney's fees, we have no way of knowing whether these expenses are reasonable and whether it customarily charges

them to clients as separate disbursements. Since it is Trucker Huss's burden to provide us with sufficient documentation to assess whether these expenses are reasonable, we disallow them.

### IV.CONCLUSION

In sum, we award the Board: (1) $15,485.88 for its delinquent contribution claim; (2) $1,025,308.72 for its withdrawal liability claim; (3) $634,715.60 in attorney's fees, $149,168.95 to be paid to Mendoza Law Offices and $485,546.65 to be paid to Trucker Huss; and (4) $5,215.79 in costs to be paid to Trucker Huss.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE